IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JUSTIN EATON and ALEXIS EATON, | ) ) | CIVIL NO. 23-00377 SOM-RT |
| | ) | ORDER GRANTING |
| Plaintiffs, | ) | DEFENDANTS BARCLAYS BANK |
| | ) | DELAWARE AND CAPITAL |
| vs. | ) | MANAGEMENT SERVICES, L.P.'S |
| | ) | MOTION TO COMPEL ARBITRATION |
| BARCLAYS BANK DELAWARE and | ) | AND DISMISSING ACTION |
| CAPITAL MANAGEMENT SERVICES, | ) | |
| L.P., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS BARCLAYS BANK
DELAWARE AND CAPITAL MANAGEMENT SERVICES, L.P.'S
MOTION TO COMPEL ARBITRATION AND DISMISSING ACTION**

## I.        INTRODUCTION.

This case arises from a dispute over performance under a settlement agreement between Plaintiffs Alexis and Justin Eaton and Defendants Barclays Bank Delaware ("Barclays") and Capital Management Services, L.P. ("CMS").  Barclays and CMS move to compel arbitration and stay proceedings.  The court grants the motion to compel arbitration.  However, instead of staying this case pending the conclusion of arbitration, as requested by Barclays and CMS, this court dismisses this action in light of the compelled arbitration of all claims.

## II.        BACKGROUND.

In April 2016, Alexis Eaton applied for and received a credit card account from Barclays, a federally insured state-

charted credit card bank.  ECF No. 24-2, PageID # 160; ECF No. 24-1, PageID # 144.  Later, she allegedly added her husband, Justin Eaton, as an authorized user on the account.  ECF No. 24-1, PageID # 144.

The Barclays cardmember agreement governs its credit card accounts.[1]  ECF No. 24-1, PageID # 144.  The cardmember agreement states that "[b]y signing, keeping, using or otherwise accepting your Card or Account, you agree to the terms and conditions of this Agreement."  ECF No. 45, PageID # 280.  It also contains an arbitration provision.  *Id.* at PageID #s 285-86.  Within that provision, a sentence that appears to be a delegation clause[2] provides that, "[a]t the election of either you or us, . . . Claims regarding the applicability of this

---

[1]  After initially believing that she had not received the cardmember agreement, ECF No. 29, PageID # 184; ECF No. 34, PageID # 233, Alexis found the copy of the cardmember agreement that Barclays had sent to her.  ECF No. 45.  Alexis's copy of the cardmember agreement appears to be from December 2015, while the copy Barclays entered into the record is dated June 2015. At a hearing, counsel for both parties agreed that the copies of the cardmember agreements were identical in all material aspects, an assessment with which the court concurs.  *Compare* ECF No. 45 (the Alexis copy) *with* ECF No. 24-4 (the Barclays copy).  The court therefore treats the Alexis copy as the governing document.

[2]  "A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all."  *Caremark LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).

arbitration provision or the validity of the entire Agreement, shall be resolved exclusively by arbitration." *Id.* at PageID # 285.

About seven years after Alexis opened the account, Barclays placed it with CMS for debt collection. ECF No. 11, PageID # 77. CMS thereafter conveyed a settlement offer to the Eatons on behalf of Barclays that would be paid in three installments. *Id.*; ECF No. 1, PageID # 12. The Eatons submitted the first two payments to CMS pursuant to the settlement. ECF No. 1, PageID # 13; ECF No. 11, PageID # 78.

The Eatons called CMS to make the final payment, but CMS refused to accept payment by phone. ECF No. 1, PageID # 13. CMS explains that it was "unable to accept further payments" on the account because the account had allegedly been "recalled by Barclays." ECF No. 11, PageID # 78. Barclays states that it "lacks knowledge or information sufficient to form a belief about the truth of the allegations." ECF No. 8, PageID # 48.

After CMS refused to accept payment via phone, the Eatons mailed a check for the final payment to CMS. ECF No. 1, PageID # 13. CMS confirms that the Eatons sent the payment, "contrary to instruction." ECF No. 11, PageID # 78. A few days later, CMS returned the check to the Eatons, along with a letter explaining that CMS was no longer handling their account. ECF No. 1, PageID # 13; ECF No. 11, PageID # 79.

The Eatons allege that Barclays and CMS thereafter began attempting to collect the entire account balance.  ECF No. 1, PageID # 14.  In July 2023, the Eatons sued Barclays and CMS in state court, asserting state and federal claims.  *Id.* at PageID #s 10-24.  Barclays removed the case to federal court. *Id.* at PageID #s 1-8.

Barclays and CMS have moved for an order compelling the Eatons to arbitrate their claims and staying court proceedings pending arbitration.  ECF No. 24.

**III.   JURISDICTION.**

The court has jurisdiction pursuant to 21 U.S.C. § 1331 because the Eatons allege violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.  The court takes supplemental jurisdiction over the Eatons' remaining state law claims pursuant to 28 U.S.C. § 1367.

**IV.   DISCUSSION.**

Barclays and CMS move to compel arbitration on the gateway issue of whether the Eatons' claims are subject to mandatory arbitration.  ECF No. 24-1, PageID # 149.  The Eatons briefly address in a footnote the argument by Barclays and CMS that the delegation clause requires arbitration of threshold issues if a party so elects.  The Eatons argue:

> There is no clear and unmistakeable [sic] delegation clause in Defendants' arbitration agreement.  The closest it gets is the parenthetical language "including

the interpretation and scope of this Arbi[t]ration
Provision, and the arbit[r]ability of the claim or
dispute." *See* Motion filed 10/15/20 at Exhibit A, page
4. But this is not a valid delegation clause. This
exact same language, common in auto dealer form
arbitration agreements, has been found by other courts
to not constitute a valid delegation clause.

ECF No. 29, PageID #s 180-81 (citing *Does v. TCSC, LLC*, 846
S.E.2d 874, 877 (S.C. Ct. App. 2020); *Stubblefield v. Best Cars
KC, Inc.*, 506 S.W.3d 377, 380 (Mo. Ct. App. 2016)).

However, the language the Eatons quote is not from the
Barclays arbitration provision, nor anywhere in the cardmember
agreement. It is not clear what document the Eatons are quoting
from, referred to by them as "Motion filed 10/15/20."
Presumably, this footnote was copied from a brief in a different
case. The Eatons filed this case in state court in 2023, so
there were no motions filed in this case in 2020. This court
could locate no filings from October 15 of any year in the
record.

The Federal Arbitration Act ("FAA") "governs the
enforceability of arbitration agreements in contracts involving
interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d
1122, 1126 (9th Cir. 2013). The FAA "creates a body of federal
substantive law of arbitrability, enforceable in both state and
federal courts and pre-empting any state laws or policies to the
contrary." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931,
936 (9th Cir. 2001); *accord Narayan v. The Ritz Carlton Dev.*

*Co., Inc.*, 140 Hawai'i 343, 350, 400 P.3d 544, 551 (2017); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006).[3]

Under the FAA, private agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021). If the party seeking arbitration establishes both factors, then the FAA "requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Although these questions are presumptively reserved for the court, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561

---

[3] The court notes that the cardmember agreement includes a "Governing Law" section providing, "THIS AGREEMENT AND YOUR ACCOUNT WILL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE AND AS APPLICABLE, FEDERAL LAW." ECF No. 45, PageID # 285. This court therefore cites Delaware and federal law, but at times additionally includes citations to Hawai'i law that is not inconsistent with either.

U.S. 63, 68-69 (2010) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)); *accord James & Jackson, LLC*, 906 A.2d at 79.  "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr.*, 561 U.S. at 70.  "The additional agreement is valid under [9 U.S.C.] § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4." *Id.* (quoting § 2).

Because such gateway issues "would otherwise fall within the province of judicial review," courts "apply a more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011).  "Rather than applying 'ordinary state-law principles that govern the formation of contracts'" as the court would "when determining, for example, the scope of a concededly binding contract, the Supreme Court has cautioned that '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they did so.'" *Id.* (quoting *First*

7

*Options of Chi., Inc., v. Kaplan*, 514 U.S. 938, 944 (1995)).
"Such [c]lear and unmistakable evidence of agreement to
arbitrate arbitrability might include . . . an express agreement
to do so."  *Id.* at 988 (quoting *Rent-A-Ctr.*, 561 U.S. at 78-80
(Stevens, J. dissenting)) (internal quotations omitted).

      The parties before the court appear to have clearly
and unmistakably agreed to arbitrate threshold questions of
arbitrability.  The delegation clause in the cardmember
agreement expressly states, "At the election of either you or
us, . . . Claims regarding the applicability of this arbitration
provision or the validity of the entire Agreement, shall be
resolved exclusively by arbitration."  ECF No. 45, PageID # 285.
Other federal district courts evaluating this apparent
delegation clause have concluded the same.  *See, e.g.*, *Cote v.
Barclays Bank Del.*, No. 14cv2370-GPC-JMA, 2015 WL 251217, *2-3
(S.D. Cal. Jan. 20, 2015); *Galan v. Barclays Bank Del.*, No. 14-
CV-23446-UU, 2014 WL 12029368, at *2-3 (S.D. Fla. Dec. 29,
2014); *see also Krause v. Barclays Bank Del.*, No. 2:13-CV-01734-
MCE-AC, 2013 WL 6145261, at *3-4 (E.D. Cal. Nov. 21, 2013);
*Thomas v. Barclays Bank Del.*, No. C20-5937-JCC-MLP, 2021 WL
9649851, at *6-7 (W.D. Wash. Mar. 2, 2021) (magistrate judge's
report and recommendation); *Leslie v. Barclays Bank Del.*, No.
1:17-cv-02514-ELR-RGV, 2017 WL 8220505, at *5 n.12 (N.D. Ga.
Oct. 13, 2017) (same).

The Eatons also argue that (1) there is no agreement signed by them or CMS; (2) CMS (unlike Barclays) has no arbitration agreement; and (3) Barclays waived its right to elect arbitration when it removed this case to federal court, rather than compelling arbitration immediately after the Eatons sued in state court.  ECF No. 29, PageID # 183-85; ECF No. 34, PageID # 232-33.

These arguments fail.  With respect to the contention that there was no signed agreement, this court notes that, although the "FAA authorizes the court to enforce only written agreements to arbitration (9 U.S.C. § 3), it does not require the written agreements to be signed."  *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013).  The cardmember agreement expressly states that by "signing, keeping, using or otherwise accepting your Card or Account, you agree to the terms and conditions of this Agreement."  ECF No. 45, PageID # 280; *see, e.g.*, *Thomas*, 2021 WL 9649851, at *4 (evaluating the same cardmember agreement at issue here and concluding that "[p]laintiff's use of the credit card . . . constituted acceptance of the Agreement"); *Mangahas v. Barclays Bank Del.*, No. SACV 16-00093 JVS (JCGx), 2016 WL 11002179, at *2 (C.D. Cal. May 9, 2016) (same).

The Eatons' remaining arguments—that CMS has no arbitration agreement and that Barclays waived its right to

elect arbitration—are foreclosed by the arbitration provision in the Cardmember Agreement, which states that it applies to Barclays agents and that parties may elect arbitration at any time before the commencement of trial.  *See* ECF No. 45, PageID # 285.

The parties must arbitrate threshold issues, and then, if relevant, substantive claims.  Accordingly, the court grants the motion by Barclays and CMS to compel arbitration.

Instead of staying this action, the court dismisses it.  *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (providing that a district court may dismiss a case when "all of the claims raised in the action are subject to arbitration").

**V.      CONCLUSION.**

The court GRANTS the motion to compel arbitration (ECF No. 24) and dismisses this action.  The Clerk of Court is directed to close this case.  If the parties' dispute results in an arbitration award and a party to the present case seeks to have a judge of this court enforce or vacate that award, that party may commence a new proceeding in this court.  If that occurs, the filing fee for commencing a new action is hereby waived.  Any party who encounters difficulty with electronically filing a new complaint with a waived filing fee should call the

Clerk of Court for assistance, referring to this order under the civil number of the present case.

IT IS SO ORDERED.

DATED:   Honolulu, Hawaiʻi, March 20, 2024.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Eaton v. Barclays Bank Del.*, Civ. No. 23-00377 SOM-RT; ORDER GRANTING DEFENDANTS BARCLAYS BANK DELAWARE AND CAPITAL MANAGEMENT SERVICES, L.P.'S MOTION TO COMPEL ARBITRATION AND DISMISSING ACTION.